No. 90,007

State of Kansas, *Appellee*, v. Lloyd Neil Messer, *Appellant*.

(91 P.3d 1191)

Opinion filed June 25, 2004.

*Scott G. Hattrup,* of Lenexa, argued the cause and was on the brief for appellant.

*Steven J. Obermeier,* assistant district attorney, argued the cause, and *Paul J. Morrison,* district attorney, and *Phill Kline,* attorney general, were with him on the brief for appellee.

The opinion of the court was delivered by

Beier, J.: Lloyd Messer appeals his conviction of misdemeanor false impersonation of a Kansas Bureau of Investigation (KBI) agent. He claims the governing statute, K.S.A. 21-3824, is unconstitutional and the evidence against him insufficient. We affirm.

The conviction arose out of a conversation between Messer and his neighbor, Michael Kirch. The details of the conversation were disputed.

Kirch reported to authorities that Messer brought up Kirch's ex-wife and children, saying he knew where she lived, where she worked, the places she frequented, and with whom she associated. When Kirch asked how Messer knew these things, Messer responded that he was a "triple agent" with the KBI. Messer went on to allege that there was a fencing operation under way at an antique mall where Kirch's ex-wife worked and that she was under investigation. Messer declared that he was a "profiler" and that he used to be a "bounty hunter." When Kirch asked to see Messer's identification, Messer said he did not carry a badge because he was undercover. Kirch also testified that Messer requested a picture of Kirch's ex-wife, which Kirch did not provide.

Kirch pondered his conversation with Messer for a few days before reporting it to the police. He was motivated to make the report by fear for his ex-wife's and children's safety.

A KBI agent testified that Messer had never worked for the KBI and that the KBI does not have a position called "triple agent." He also testified that there was no investigation involving the antique mall and that the KBI did not hire its own profilers.

An investigator testified that Messer told him he had associated with people with the KBI. Messer also told the investigator that he had "profiled" for attorneys in the past and that he was good at it. The investigator testified that Messer knew information about Kirch's ex-wife, including where she lived, and that Messer had purchased items from a garage sale at her house.

Messer testified that the conversation started when Kirch asked about the neighborhood. Messer told Kirch that his home had been burglarized but, because there were no signs of forced entry, the police had been unable to help him retrieve the stolen items. Messer claimed that he purchased some of the stolen items back from a garage sale and an antique mall.

At trial, Messer argued that he did not know that the garage sale he mentioned happened to be close to Kirch's ex-wife's house or that Kirch's ex-wife worked at the antique mall. He also asserted that he had never been a "profiler" for the KBI, and denied knowing any information about Kirch's ex-wife. He said he had called himself a "profiler" because he was good with details, had a good memory, could put information together, and could easily remember faces. He maintained that he had always been a "profiler" but had never worked for any law enforcement agency.

Messer also testified that Kirch brought up the KBI. Kirch had wondered why Messer did not work, and stated: "[Y]ou've got to be either working undercover or doing something illegal." Messer explained he had worked as an independent remodeling contractor, but too many injuries had forced him to stop working. Messer told Kirch that he had been interviewed by KBI agents regarding a death in Ottawa. He denied working for the KBI but told Kirch about his "profiling" abilities and said he had been a "bounty

hunter" in the early 1970s. By "bounty hunter," Messer meant that he had worked with a bail bondsman.

The district court held that K.S.A. 21-3824 "merely requires a holding out that one is a public officer or public employee. Nobody has to rely on that holding out." Noting the different versions of the conversation, the district court emphasized that the investigator's testimony supported Kirch's version of the facts and found Messer guilty of false impersonation of a KBI agent.

K.S.A. 21-3824 provides in pertinent part:

"False impersonation is representing oneself to be a public officer or public employee or a person licensed to practice or engage in any profession or vocation for which a license is required by the laws of the state of Kansas, with knowledge that such representation is false."

Messer asserts that this statute is unconstitutionally overbroad, unduly burdening his free speech rights. He argues that he was merely telling stories and should be entitled to exaggerate. Although he acknowledges that he does not have the right to say "I am an agent working for the KBI," he contends K.S.A. 21-3824 must be construed to require proof of an overt act or a specific intent to deceive before he can be convicted.

The State first asserts that Messer failed to preserve this constitutional argument for appeal. " '[W]hen constitutional grounds are asserted for the first time on appeal, they are not properly before [this court] for review.' " *State v. Conley*, 270 Kan. 18, 30, 11 P.3d 1147 (2000), *cert. denied* 532 U.S. 932 (2001) (quoting *State v. Shears*, 260 Kan. 823, 837, 925 P.2d 1136 [1996]). We regard Messer's counsel's argument to the district court that a guilty verdict "would be criminalizing what would otherwise be free speech" adequate to preserve the overbreadth argument.

Messer's argument nevertheless fails on the facts and the law.

Factually, acceptance of Messer's overbreadth argument would require this court to reweigh Messer's and Kirch's credibility. This is not our function. See *State v. Moore*, 269 Kan. 27, 30, 4 P.3d 1141 (2000). The district judge who heard and observed both men's testimony found Kirch's version of the conversation more believable. This version included Messer representing himself as

an agent of the KBI with information about Kirch's ex-wife. We cannot reject Kirch's version of the conversation and adopt Messer's on appeal.

Legally, our standard of review is de novo. See *State v. Maass,* 275 Kan. 328, 64 P.3d 382 (2003) (interpretation of statute); *State v. Seck,* 274 Kan. 961, 964, 58 P.3d 730 (2002) (determination of statute's constitutionality).

Messer relies upon Kansas' prior false impersonation statute, Kansas' felony false impersonation statute, and other jurisdictions' false impersonation statutes to argue that our current statute requires proof of an overt act or a specific intent to mislead another.

"In Kansas, all crimes are statutory and the elements necessary to constitute a crime must be gathered wholly from the statute." *State v. Sweat,* 30 Kan. App. 2d 756, 760, 48 P.3d 8 (2002) (quoting *State v. Crockett,* 26 Kan. App. 2d 202, 205, 987 P.2d 1101 [1999]). There is nothing ambiguous or unclear about the language of the statute before us. We need not employ canons of statutory construction to discern its meaning or the legislative intent supporting its passage. We also need not compare it to other current or repealed statutes from this or any other jurisdiction. The statute's plain language does not require proof of an overt act beyond the false representation itself, and it does not require proof of a specific intent to deceive.

Furthermore, both the Court of Appeals and this court have previously rejected an argument that the statute requires proof of an overt act beyond the making of a false representation.

In *State v. Marino,* 23 Kan. App. 2d 106, 929 P.2d 173 (1996), the defendant was a Harvard Law School graduate but not licensed to practice in Kansas. He appeared on television, stating he had practiced law in Kansas City "off and on for about the last 8 years," handling criminal and divorce cases. 23 Kan. App. 2d at 107. He appealed his later false impersonation conviction based on this statement, including an argument that the statute was overbroad. Marino's challenge failed. The Court of Appeals did not require proof that Marino had actually tried to practice law in Kansas, or that anyone had relied on his statements, to uphold the conviction. *Marino,* 23 Kan. App. 2d at 111.

In *Seck,* 274 Kan. 961, the defendant was suspended indefinitely from the practice of law. During the suspension, he used letterhead with "Kenneth P. Seck, Attorney and Counselor at Law" printed on it to send a letter to the owner of a newspaper, threatening to bring a lawsuit. 274 Kan. at 962. This court held that the prohibited act in Seck's case was to represent that he was licensed to practice law when he was not. "There is no constitutionally protected act which is prohibited or curtailed [by the statute]. The statute is not constitutionally overbroad." 274 Kan. at 965.

Here, according to Kirch's version of the conversation, Messer made an unequivocal false representation that he was a "triple agent" for the KBI. This was not mere puffing. It did not test the outer limits of constitutionally protected speech. We see no reason to reconsider our earlier holding that the statute is not unconstitutionally overbroad.

Finally, Messer also argues there was insufficient evidence to find him guilty of false impersonation. When the sufficiency of the evidence is challenged, "the standard of review is whether, after review of all the evidence, viewed in the light most favorable to the prosecution, the appellate court is convinced that a rational factfinder could have found the defendant guilty beyond a reasonable doubt." *State v. Beach,* 275 Kan. 603, Syl. ¶ 2, 67 P.3d 121 (2003).

Because Messer's sufficiency claim relies upon elements of the crime that we refuse to read into the legislature's choice of statutory language, his claim fails. The State presented ample evidence of the elements actually required, and we have no trouble concluding that a rational factfinder could have found Messer guilty beyond a reasonable doubt.

Affirmed.