(116 P.3d 720)
No. 92,030

STATE OF KANSAS, *Appellee*, v. MARSHALL M. VOYLES, II, *Appellant*.

Opinion filed July 15, 2005.

*Shawn Minihan*, assistant appellate defender, of Topeka, for appellant.

*Bradford L. Williams*, county attorney, and *Phill Kline*, attorney general, for appellee.

Before GREENE, P.J., PIERRON and BUSER, JJ.

GREENE, J.: Marshall M. Voyles, II, appeals his convictions on four counts of aggravated criminal sodomy and four counts of aggravated indecent solicitation of a child, arguing that the court erred in failing to give a jury unanimity instruction and challenging the constitutionality of K.S.A. 21-3506(a)(1) and K.S.A. 21-3511(a). We affirm the convictions and reject the constitutional challenge.

*Factual and Procedural Background*

On October 8, 2002, C.C. (then age 10) and E.F. (then age 9) gave a letter to Thelma, their mother/step-mother respectively, stating: "I need to tell you something about dad. We wanted to tell you before but we were scared. He is makeing [*sic*] us do you know whate [*sic*]." When Thelma asked the girls for clarification, they responded that their dad (defendant Voyles) was "making them suck his thing."

Later that day, Thelma took the girls to visit her aunt and disclosed to her the girls' letter and description of what Voyles did. The aunt then talked to the girls about the incidents, and the girls explained to her that Voyles made them perform oral sex on him. The girls indicated the incidents occurred in their mother's bed, in the front room of their house, in their dad's truck, at a café, and at their grandmother's house. Additionally, the girls indicated they had performed oral sex on Voyles to get out of being punished, to get out of doing chores, and to get ice cream.

Subsequently, John Theis, a social worker and therapist at Horizons Mental Health Center, conducted sexual abuse evaluations of the girls. E.F. told Theis that Voyles made her perform oral sex on him two or three times. E.F. described the act of oral sex in detail and stated the incidents occurred in Voyles' bedroom and in the living room of their house in Norwich. E.F. explained that sometimes she or C.C. would play on the computer while the other one performed oral sex on Voyles. E.F. said the incidents had occurred during the summer.

In C.C.'s separate interview with Theis, she explained that Voyles made her perform oral sex on him in his truck, on his bed, and at her grandmother's house. C.C. described the act of oral sex in detail and said Voyles made her perform oral sex on him three or four times. C.C. said the first incident occurred on the couch in the living room of her house. C.C. also told Theis that she played on the computer while E.F. performed oral sex on Voyles, and vice versa. Following one or two of the incidents, Voyles gave her and E.F. each a dollar. Like E.F., C.C. said the incidents had occurred during the summer.

The State charged Voyles with four counts of aggravated criminal sodomy, in violation of K.S.A. 21-3506(a)(1), and four counts of aggravated indecent solicitation of a child, in violation of K.S.A. 21-3511(a). The complaint initially alleged the incidents occurred on or about August 2002, but the trial court later granted the State's request to amend the complaint to allege the incidents occurred between June 2002 and August 2002.

The jury found Voyles guilty of all counts. Voyles filed motions for mistrial and directed verdict of acquittal; both motions were

denied. On January 2, 2004, the trial court ordered Voyles to serve a controlling prison sentence of 248 months.

Voyles timely appeals.

*Was the District Court's Failure to Give a Unanimity Instruction Clearly Erroneous?*

Since Voyles did not request a unanimity instruction, we review his challenge for clear error. See K.S.A. 2004 Supp. 22-3414(3); *State v. Banks*, 273 Kan. 738, 743-44, 46 P.3d 546 (2002). A jury instruction error is clearly erroneous only if the reviewing court is firmly convinced there is a real possibility the jury would have rendered a different verdict if the trial error had not occurred. 273 Kan. at 744.

A criminal defendant in Kansas has a fundamental right to jury unanimity. See K.S.A. 22-3421 and K.S.A. 22-3423(1)(d). Where several acts are alleged and any one of them could constitute the crime charged, the jury must be unanimous as to which act or incident constitutes the crime. To ensure jury unanimity in such cases, our Supreme Court has required that either (i) the State elect the particular criminal act upon which it will rely for conviction or (ii) the trial court instruct the jury that all of the jurors must agree that the same underlying criminal act has been proved without a reasonable doubt. See *State v. Carr*, 265 Kan. 608, 618, 963 P.2d 421 (1998). The pattern jury instructions for Kansas contain a specific instruction for use in such cases. See PIK Crim. 3d 68.09-B (multiple acts).

According to the initial charging document, the four counts each of aggravated criminal sodomy and aggravated indecent solicitation of a child included two incidents with each child victim, with each incident involving both a solicitation and a subsequent sodomy; one incident "in Norwich," and one incident "in a pickup truck." The problem is that the evidence at trial included reference to more than two such incidents with each child; in fact, scrutiny of the record reveals that there was reference to at least "two or three" such incidents involving E.F. and at least "three or four" such incidents involving C.C. The family member who first talked to the girls about these events testified that the girls described the inci-

dents as occurring to each of them in as many as five separate locations, and it was never established which of those locations were in Norwich.

In order to determine whether the State made an election as to the particular criminal acts relied upon, we analyze: (i) the original complaint, (ii) the opening statement and closing arguments of the prosecutor, and (iii) the totality of the jury instructions. See *Banks*, 273 Kan. at 745-46. Based upon this analysis, we are unable to conclude that there was an election made by the State. As noted above, the original complaint identifies only that there were two incidents involving C.C. and two incidents involving E.F., occurring in Norwich and in a pickup without any specificity of time, place, date, or precise events, except (as amended) that the acts occurred between June and August 2002.

The opening statement and closing arguments of the prosecutor generally referenced several incidents but also focused on incidents occurring in the house and in the truck, without any specificity as to either, and the girls identified at least two separate locations in their house and additional acts in their grandmother's house. Moreover, as to the incidents in the girls' house, the prosecutor never distinguished between the incidents in the bedroom and the incidents in the living room.

The jury instructions stated that to establish that Voyles committed the crimes of aggravated criminal sodomy as to both C.C. and E.F., the State must prove: (1) Voyles engaged in sodomy with a child under age 14, and (2) this act occurred on or about June-August 2002, in Kingman County, Kansas; and to establish that Voyles committed the crimes of aggravated indecent solicitation of a child as to both C.C. and E.F., the State must prove: (1) Voyles solicited to commit the act of aggravated criminal sodomy, (2) the child was then a child under age 14, and (3) this act occurred on or about June-August 2002, in Kingman County, Kansas.

In oral argument before this court, the State was unable to indicate with any precision whatsoever which acts were relied upon for each of the criminal counts or convictions. Clearly, this was a multiple acts case, but we are not satisfied that there was an election made by the State and there was no specific jury instruction

as to unanimity; thus, the requirements of our Supreme Court to ensure jury unanimity were not met.

The more difficult question is whether the district court's failure to give a unanimity instruction was clear error entitling Voyles to a new trial. The proper analysis to make this determination has been problematic. See, *e.g.*, Ediger, *Elect or Instruct: Preventing Evidence of Multiple Acts from Threatening Juror Unanimity in Criminal Trials*, 74 J.K.B.A. 28 (May 2005); Beier, *Lurching Toward the Light: Alternative Means and Multiple Acts Cases in Kansas*, 44 Washburn L.J. 275 (2005).

In *State v. Hill*, 271 Kan. 929, Syl. ¶ 3, 26 P.3d 1267 (2001), our Supreme Court adopted a two-step harmless error analysis:

"In applying a two-step harmless error analysis, the first step is to decide whether there is a possibility of jury confusion from the record or if evidence showed either legally or factually separate incidents. Incidents are legally separate when the defendant presents different defenses to separate sets of facts or when the court's instructions are ambiguous but tend to shift the legal theory from a single incident to two separate incidents. Incidents are factually separate when independent criminal acts have occurred at different times or when a later criminal act is motivated by 'a fresh impulse.' When jury confusion is not shown under the first step, the second step is to determine if the error was harmless beyond a reasonable doubt with respect to all acts."

Faithfully applying the *Hill* two-step analysis, we must first determine whether there is a possibility of juror confusion *or* evidence showing either legally or factually separate incidents. See 271 Kan. at 939. Here, there is little difficulty discerning that each of the multiple sexual acts described within the evidence occurred at different times within a 3-month period and each was motivated by a fresh impulse, thus establishing that particular type of factual separability required by the first prong of the *Hill* test. See *State v. Arculeo*, 29 Kan. App. 2d 962, 984, 36 P.3d 305 (2001), (Beier, J., concurring). Since we have not yet addressed jury confusion but have found factually separate incidents (which may equate to jury confusion under *Hill*—see 29 Kan. App. 2d at 984), it is rather unclear whether we reach the second prong of the *Hill* test to determine whether the error was harmless beyond a reasonable doubt with respect to all acts. See 29 Kan. App. 2d at 986. Clearly,

however, to reverse on this basis alone would be consistent with the structural error approach that was explicitly rejected in *Hill*. See 271 Kan. at 939.

Based upon careful scrutiny of appellate case law addressing this issue in similar situations, harmless error must ultimately be determined from an examination of whether the defendant has presented separate defenses to any of the acts alleged. See *Banks*, 273 at 746; *State v. Dean* 272 Kan. 429, 443-44, 33 P.3d 225 (2001); *Hill*, 271 Kan. at 938-39; *State v. Shoptaw*, 30 Kan. App. 2d 1059, 1061, 56 P.3d 303, *rev. denied* 275 Kan. 968 (2002); *Arculeo*, 29 Kan. App. 2d at 974-75. Although we are cognizant that this *appears* to be merely an alternative analysis for step one of the *Hill* test, it is undeniably the only true touchstone for harmless error in cases of this nature. We respectfully conclude that in multiple acts cases, controlling case law requires that if, as here, it is determined that factually separate incidents have been alleged, failure to give a unanimity instruction must be deemed harmless if the defendant has presented a unified defense to all of those acts.

Here, Voyles attempts but fails to persuade us that his defense was not unified because of questions as to proper venue for some of the acts alleged. This is not persuasive because there was no objection as to venue for any of the acts, nor was the argument made at any time before the jury's verdicts. The first and only challenge to venue was made posttrial in the defendant's motion for acquittal, and it was denied based upon the applicability of K.S.A. 22-2603, K.S.A. 22-2604, or K.S.A. 22-2608. We conclude that *posttrial* arguments challenging venue as to some of the acts alleged do not establish a legally separate defense for purposes of requiring that a unanimity instruction be given. The only defense presented was a general denial of all the acts alleged, and the strategy at trial was to show minimal opportunity by the time line of the crimes and to attack the credibility of the victims' stories. As summarized in the closing arguments:

"[Prosecutor:] And the issue is pretty—pretty simple. Did the defendant have those little girls engage in oral sex with him? Yes or no. That is what this case is about. That is what those eight counts are as you go back and you read those instructions and go through those things with the definition."

"[Defense counsel:] . ·. . Mr. Voyles doesn't have any burden placed upon him, but he did indeed take the stand. And what did he tell you? He told you about when he was—what he did. What happened that summer. When he believes [C.C.] came out to live with them. Late June of 2002. We're going to go through the time table here in a little bit. And he did deny these allegations. He looked at you and told you, 'No, I didn't do this to my kids.' "

As in *Banks, Dean, Hill, Shoptaw* and *Arculeo*, Voyles did not present a separate defense or offer materially distinct evidence of impeachment regarding one or more of the acts alleged. Instead, he presented a general denial of participation in *any* wrongful conduct with these girls during the summer of 2002. There was no reason to assume jury confusion, and any failure to give a unanimity instruction was harmless error.

In so holding, we reiterate the caveat from *Hill*:

" 'This holding should not be interpreted to give prosecutors carte blanche to rely on harmless error review, and it is strongly encouraged that prosecutors elect a specific act or the trial court issue a specific unanimity instruction. In many cases involving several acts, the requirement that an appellate court conclude beyond a reasonable doubt as to all acts will not be found harmless.' " 271 Kan. at 940.

*Are K.S.A. 21-3506(a)(1) and K.S.A. 21-3511(a) Unconstitutional Under the Due Process Clause of the Fourteenth Amendment to the United States Constitution and § 10 of the Kansas Constitution Bill of Rights?*

Although Voyles' brief on appeal consistently references the wrong statute (see K.S.A. 2004 Supp. 21-3502[a][2]—rape), we proceed on the premise that the focus of his intended challenge is either K.S.A. 21-3506(a)(1) or K.S.A. 21-3511(a). Presumably, Voyles argues that the Kansas statutes defining aggravated criminal sodomy and aggravated indecent solicitation of a child are unconstitutional because they prohibit consensual intimate contact with an unmarried adolescent person. We review constitutional challenges to Kansas statutes de novo. See *State v. Messer*, 278 Kan. 161, 164, 91 P.3d 1191 (2004).

First, we note that Voyles did not challenge the constitutionality of K.S.A. 21-3506 and K.S.A. 21-3511(a) before the trial court. As a general rule, when constitutional grounds for reversal are asserted for the first time on appeal, they are not properly before an

appellate court for review. *State v. Williams*, 275 Kan. 284, 288, 64 P.3d 353 (2003). There are three exceptions to this rule:

"(1) The newly asserted claim involves only a question of law arising on proved or admitted facts and is determinative of the case; (2) consideration of the claim is necessary to serve the ends of justice or to prevent the denial of fundamental rights; and (3) the district court is right for the wrong reason. [Citations omitted.]" 275 Kan. at 288-89.

Here, because Voyles failed to acknowledge the absence of a constitutional challenge below, he also failed to allege that any of the aforementioned exceptions apply to warrant examination of his claim of error here. Nevertheless, because Voyles' challenge to the constitutionality of K.S.A. 21-3506(a)(1) and K.S.A. 21-3511(a) is purely a question of law that may be determinative as to his convictions, we elect to address his challenge on its merits.

"The constitutionality of a statute is presumed, all doubts must be resolved in favor of its validity, and before the statute may be stricken down, it must clearly appear the statute violates the Constitution. In determining constitutionality, it is the court's duty to uphold a statute under attack rather than defeat it, and if there is any reasonable way to construe the statute as constitutionally valid, that should be done. Statutes are not stricken down unless the infringement of the superior law is clear beyond substantial doubt. [Citation omitted.]" *State v. Groschang*, 272 Kan. 652, 668, 36 P.3d 231 (2001).

Presumably, Voyles argues that K.S.A. 21-3506(a)(1) and K.S.A. 21-3511(a) violate the Due Process Clause of the Fourteenth Amendment to the United States Constitution because they impose "a blanket proscription upon consensual, private intimate activities of all unmarried persons under age fourteen without regard to the[ir] maturity." Preliminarily, we must question Voyles' standing to challenge any statutory proscription of consensual activity, since there was no allegation that the conduct in this case was consensual. See *State v. Thompson*, 221 Kan. 165, 171-73, 558 P.2d 1079 (1976) (analyzing constitutionality of former sodomy statute; holding defendant lacked standing to challenge sodomy statute on ground that it unconstitutionally prohibited private, consensual acts of adults when defendant was convicted of forcible sodomy).

Even if Voyles would have standing to challenge the constitutionality of the statute on the grounds presented, the State correctly

notes that his argument fails under the reasoning set forth in *State v. Taylor*, 33 Kan. App. 2d 284, 101 P.3d 1283 (2004), *rev. denied* 279 Kan. 1010 (2005). In *Taylor*, defendant challenged the constitutionality of K.S.A. 21-3504(a)(1) (aggravated indecent liberties with a child), which proscribes "[s]exual intercourse with a child who is 14 or more years of age but less than 16 years of age." As in this case, defendant argued the statute imposes a " '[b]lanket proscription upon consensual, private intimate activities of all unmarried persons under age sixteen without regard to the [*sic*] maturity, [which] violates the Due Process Clause.' " 33 Kan. App. 2d at 286.

The *Taylor* court explained that to prevail on appeal, defendant was required to demonstrate no rational relationship existed between K.S.A. 21-3504(a)(1) and a legitimate governmental objective. 33 Kan. App. 2d at 286 (citing *State v. Risjord*, 249 Kan. 497, 501-02, 819 P.2d 638 [1991]). The court then rejected defendant's argument, holding: "The State has a compelling interest in the well-being of its children and in the exercise of its police powers may enact legislation to protect children from adult sexual predators. [Citation omitted.] We conclude a rational relationship exists between K.S.A. 21-3504(a)(1) and the legitimate interests of the State." 33 Kan. App. 2d at 286.

The *Taylor* analysis is equally applicable here and leads to the conclusion that rational relationships exist between both K.S.A. 21-3506(a)(1) and K.S.A. 21-3511(a) and the legitimate interests of the State. For this reason, Voyles' constitutional challenge fails.

*Did the District Court Err in Ordering Voyles to Reimburse the State for Attorney Fees?*

Finally, Voyles challenges the district court's order that he reimburse the State for his attorney fees pursuant to K.S.A. 2004 Supp. 22-4513. We have unlimited review of this issue framing the interpretation of a statute. See *State v. Maass*, 275 Kan. 328, 330, 64 P.3d 382 (2003).

At the close of Voyles' sentencing hearing, his attorney reminded the district court of "[i]ndigent board reimbursement," and the court stated that it would *recommend* such reimbursement as a

condition of parole. In the court's journal entry of sentencing, the other conditions of probation included *as a comment*: "The Defendant shall reimburse the Aid to Indigent Fund."

The reimbursement statute, K.S.A. 2004 Supp. 22-4513, provides:

"(a) If the defendant is convicted, all expenditures made by the state board of indigents' defense services to provide counsel and other defense services to such defendant or the amount allowed by the board of indigents' defense reimbursement tables as provided in K.S.A. 22-4522, and amendments thereto, whichever is less, shall be taxed against the defendant and shall be enforced as judgments for payment of money in civil cases.

"(b) *In determining the amount and method of payment of such sum, the court shall take account of the financial resources of the defendant and the nature of the burden that payment of such sum will impose.* A defendant who has been required to pay such sum and who is not willfully in default in the payment thereof may at any time petition the court which sentenced the defendant to waive payment of such sum or of any unpaid portion thereof. If it appears to the satisfaction of the court that payment of the amount due will impose manifest hardship on the defendant or the defendant's immediate family, the court may waive payment of all or part of the amount due or modify the method of payment." (Emphasis added.)

We conclude that Voyles' challenge is premature. The district court has not yet determined the amount and method of payment of such sum and therefore had no obligation to consider Voyles' financial resources. The record is simply devoid of any indication that the court has spoken with finality on the matter of reimbursement, and we cannot consider the challenge until it has ripened.

We trust that in determining the amount and manner of payment, the district court should note that the better practice—if not the statutory requirement—is that a defendant's ability to pay *should* be considered. See K.S.A. 2004 Supp. 22-4513(b).

Affirmed.

Buser, J., concurring: I concur that the State never elected the particular criminal acts (among the many perpetrated against these two young girls) spanning a 3-month time period upon which the State relied for its convictions. This failure coupled with the district court's omission in failing to instruct the jury regarding the need for unanimity in its verdicts was obvious error. I also agree with

my colleagues that in this case, and in child sexual assault cases generally, *Hill* and its progeny essentially mandate a finding that such error is harmless beyond a reasonable doubt as to all acts in those cases where there is solely a general denial by the defendant of any wrongful conduct—the so-called "credibility contest" between the alleged child victim and the defendant.

I write separately to express a concern that given this case law precedent, the caveat cited in *Hill*, 271 Kan. at 940, and restated in our opinion that "[t]his holding should not be interpreted to give prosecutors carte blanche to rely on harmless error review" may have become, over time, an untenable admonition.