(154 P.3d 42)

No. 94,795

STATE OF KANSAS, *Appellee*, v. DUANE L. BUCKNER, *Appellant*.

Opinion
filed March 16, 2007.

*Bach T. Hang*, of Joseph & Hollander, P.A., of Wichita, and *M. Kristine Savage* and *Christopher M. Joseph*, of Joseph & Hollander, P.A., of Topeka, for appellant.

*Kim W. Cudney*, county attorney, and *Phill Kline*, attorney general, for appellee.

Before RULON, C.J., GREENE and MCANANY, JJ.

GREENE, J.: Duane L. Buckner appeals his conviction for attempted manufacture of methamphetamine, arguing that the district court's failure to give a unanimity instruction together with its failure to define overt act within the instruction for attempt, were clear errors entitling him to a new trial. He does not appeal his related convictions of felony possession of drug paraphernalia, misdemeanor possession of drug paraphernalia, possession of pseudoephedrine, and possession of methamphetamine, and these convictions are not before us. We agree with Buckner that the failure to give a unanimity instruction entitles him to a new trial on the attempted manufacturing charge, so we reverse this conviction and remand for new trial.

### *Factual and Procedural Overview*

In July 2004, during a traffic stop of Buckner's common-law ex-wife, Joanna Jones, one of the officers involved noticed a backpack in her vehicle containing a "plastic bag full of a white powdery substance." She claimed the substance was laundry detergent and that she was in the neighborhood to visit Buckner. The officer allowed her to leave, but then followed her to the vicinity of the residence of Robert Lechwar, where the officer encountered Buckner in the yard. After a short pretextual conversation with Buckner, the officer left the scene with the intent to procure a search warrant for the Lechwar residence.

Three days later, a search warrant was issued for Lechwar's residence. Specifically, law enforcement was "looking for evidence of a clandestine methamphetamine lab." The primary suspect at that time, however, was Lechwar. Upon execution of the warrant, evidence found included: liquid ether (starting fluid) cans with punctured bottoms, ephedrine pills, lithium batteries, a blender with white powdery substance "all over the pitcher part," dark colored liquid later sent to the Kansas Bureau of Investigation, a rusty surgical clamp, aluminum foil, a bag of "rock salt-type of substance," a bottle with a hose attached, syringes-some of which contained liquid, "pen bodies," small plastic bags, razor blades, a small spoon, battery carcasses, acid, and wire cutters. This led to the arrest of

Lechwar, who told the investigator that Buckner was making meth-amphetamine on Lechwar's property 2-3 times a week.

Buckner was charged with the unlawful manufacture of meth-amphetamine "between the dates of June 1, 2004 and July 31, 2004," and alternatively he was charged with attempt to manufac-ture methamphetamine during this same time period. Prior to trial, Buckner filed a motion for a bill of particulars, noting that the 2-month time range "with no specifics is impossible to defend." The State responded "that [the] methamphetamine was manufactured or was attempted to be manufactured by [Buckner] on June 18 and 19, 2004, and July 3, 4, 7, 9, and 11, 2004. These acts occurred at 1271 12th Road, Washington County, Kansas." Buckner filed a notice of alibi for the dates at issue.

At trial, the State relied heavily on the testimony of Lechwar, who testified that Buckner made methamphetamine on each of the dates cited in the State's amended complaint. The defense pre-sented testimony from several different witnesses to support Buck-ner's alibi for each of the dates specified; this testimony was not unified, however, and different witnesses supported the alibi for each respective date, with limited overlap among witnesses as to some of the material dates.

No unanimity instruction was requested or given, and there was no objection to the instruction defining attempt to manufacture methamphetamine, which omitted the definition of "overt act." Buckner was found guilty of the alternative charge of attempt to manufacture methamphetamine and the related charges that are not challenged in this appeal. He was sentenced to a total of 170 months' imprisonment. He timely appeals.

## Standard of Review

Because Buckner complains of a failure to give an instruction that was not requested and an instruction omitting a definition that was never the subject of an objection, we review these errors under the clear error standard. See K.S.A. 2006 Supp. 22-3414(3); *State v. Pabst*, 273 Kan. 658, 660, 44 P.3d 1230, *cert. denied* 537 U.S. 959 (2002). Instructions are clearly erroneous only if the reviewing court is firmly convinced that there is a real possibility the jury

would have rendered a different verdict if the trial error had not occurred. *State v. Trotter*, 280 Kan. 800, 805, 127 P.3d 972 (2006).

### *Was It Clear Error for the District Court to Fail to Give a Unanimity Instruction?*

Buckner first argues that it was clear error for the district court to fail to give the unanimity instruction, PIK Crim. 3d 68.09-B. This instruction states:

"The State claims distinct multiple acts which each could separately constitute the crime of _____. In order for the defendant to be found guilty of _____, you must unanimously agree upon the same underlying act."

Jury unanimity is guaranteed in Kansas by statute. See K.S.A. 22-3421; K.S.A. 22-3423(1)(d). Our Supreme Court has addressed the importance of jury unanimity in a multiple acts case in this manner:

" '[Where] several acts are alleged and any one of them could constitute the crime charged . . . the jury must be unanimous as to which act or incident constitutes the crime. To ensure jury unanimity in multiple acts cases, we require that either the State elect the particular criminal act upon which it will rely for conviction, or that the trial court instruct the jury that all of the jurors must agree that the same underlying criminal act has been proved without a reasonable doubt.' " *State v. Carr*, 265 Kan. 608, 618, 963 P.2d 421 (1988) (quoting *State v. Timley*, 255 Kan. 286, 289-90, 875 P.2d 242 [1994]).

Here, the State concedes that this was a multiple acts case, which focuses our review on the more difficult question: Whether the district court's failure to give a unanimity instruction was clear error entitling Buckner to a new trial. The proper analysis to make this determination has been problematic. See, *e.g.*, Ediger, *Elect or Instruct: Preventing Evidence of Multiple Acts from Threatening Juror Unanimity in Criminal Trials*, 74 J.K.B.A. 28 (May 2005); Beier, *Lurching Toward the Light: Alternative Means and Multiple Acts Cases in Kansas*, 44 Washburn L.J. 275 (2005).

Both parties, however, urge us to apply the analysis set forth by our Supreme Court in *State v. Hill*, 271 Kan. 929, 939, 26 P.3d 1267 (2001).

"[T]he first step is to determine whether there is a possibility of jury confusion from the record or if the evidence showed either legally or factually separate

incidents. Incidents are legally separate when the defendant presents different defenses to separate sets of facts or when the court's instructions are ambiguous but tend to shift the legal theory from a single incident to two separate incidents. Incidents are factually separate when independent criminal acts have occurred at different times or when a later criminal act is motivated by 'a fresh impulse.' When jury confusion is not shown under the first step, the second step is to determine if the error in failing to give a unanimity instruction was harmless beyond a reasonable doubt with respect to all acts." 271 Kan. at 939.

Additionally, Buckner notes that we have previously stated that harmless error in these situations must ultimately be determined from an examination of whether the defendant has presented separate defenses to any of the acts alleged, citing *State v. Voyles*, 34 Kan. App. 2d 110, 115, 116 P.3d 720 (2005) (review granted). Although the State argues that Buckner presented a general denial of all the acts alleged, Buckner argues that he "presented separate defenses, with separate evidence and separate witnesses to refute each of the alleged acts." We must examine the record to ascertain whether such separate defenses were presented and whether the failure of the court to give the unanimity instruction raises the real possibility that the jury would have rendered a different verdict if the instruction had been given.

The State relied principally on the testimony of Lechwar, who testified that Buckner made methamphetamine at his home in Washington County, Kansas, on the dates specified in the State's amended complaint. Buckner presented evidence in defense to each of the acts alleged as follows:

June 18-19, 2004: Buckner's son testified that he was with his father on these dates for Father's Day weekend, and they were in Clay Center (Clay County), Kansas. This testimony was corroborated by both Buckner and Jones.

July 3-4, 2004: Jones testified that Buckner was at Kathy Rose's home in Clay Center on July 3, 2004. Buckner's son testified that he spent the Fourth of July with his dad at the Lechwar house, and they had "fireworks and barbecues." He also watched his dad and Lechwar put in an air conditioner, and during this time Lechwar picked up a plate with "syringes and bags and papers" and told Buckner's son that he didn't want him to think it was his dad's. He

stated that his dad never gave him any indication he was hiding anything. The alibi for July 4 was also corroborated by both Jones and one of Buckner's friends, who testified that he spent July 4 with Buckner and drove Buckner and his son to Lechwar's residence and back to Clay Center on July 4, 2004; he stated that he never saw methamphetamine being made while he was at Lechwar's home. Buckner corroborated all such testimony.

July 7, 2004: Although Lechwar testified that Buckner manufactured methamphetamine at his house on this date, Buckner testified that he was working on Lechwar's motorcycle that day and never manufactured any methamphetamine out there. Jones testified that to the best of her knowledge, "nothing was going on on the 7th."

July 9, 2004: A friend of Lechwar's girlfriend testified that she was at the Lechwar house all day on the 9th and that Buckner was sleeping and nobody was cooking methamphetamine. Kathy Rose testified that she drove Buckner to Lechwar's house on this date in order for Buckner to work on a motorcycle; Buckner also called and asked her for a ride home; when she arrived at Lechwar's house she had trouble waking Buckner. This testimony was corroborated in part by Buckner and also by Jones. Jenny Cole testified that she did not see any methamphetamine being manufactured on July 9, 2004.

July 11, 2004: Kathy Rose testified that Buckner was with her and her family all day on July 11, 2004, and she remembered the date because it was her favorite niece's birthday.

We do not view Buckner's defense strategy as a "general denial" as characterized by the State, but rather as separate defenses to each occasion when he allegedly participated in the manufacture of methamphetamine. Depending on how each juror viewed the testimony of each witness, it was possible for there to be disagreement as to which of the specified dates Buckner was involved in manufacturing activity. For example, if one or more but less than all jurors believed Kathy Rose as to July 11, they may have been inclined to find Buckner not guilty on that occasion but guilty on another occasion; whereas one or more but less than all jurors may have believed all other witnesses, but doubted the credibility of

Kathy Rose, thus being inclined to find Buckner guilty of the charges on July 11 but not guilty on the other occasions. If this or a similar scenario occurred, Buckner was convicted by less than a unanimous jury and this is precisely the problem that the unanimity instruction is designed to prevent.

We conclude that this was a classic multiple acts case and that the separate defenses to each of the acts required that the unanimity instruction be given in order to assure a unanimous jury. We are convinced that there is a real possibility the jury would have rendered a different verdict if the instruction had been given. The district court's failure to give the instruction under these circumstances constituted clear error and requires that we reverse Buckner's conviction and remand for new trial.

Given our conclusion on Buckner's first claim of error, we need not address his challenge to the attempt instruction for omitting a definition of overt act, but we note that this instruction likely exacerbated the problem caused by a lack of unanimity instruction. No specific overt act on any of the specified occasions was ever charged, discussed, or argued to the jury by the State. In the absence of any specified overt act, the lack of a definition of "overt act" in the instructions, and the lack of a unanimity instruction, it is entirely too likely that Buckner was denied a fair trial. On remand, we trust that a specific overt act on each of the specified occasions will be alleged and that the instructions will carefully define the elements of attempt, including the definition of overt act.

Reversed and remanded for new trial on attempted manufacture of methamphetamine.