No. 86,478

STATE OF KANSAS, *Appellee*, v. KENNETH SECK, *Appellant*.

(58 P.3d 730)

Opinion filed December 6, 2002.

*Kenneth P. Seck*, appellant, argued the cause and was on the briefs pro se.

*Steven J. Obermeier*, assistant district attorney, argued the cause, and *Paul J. Morrison*, district attorney, and *Carla J. Stovall*, attorney general, were with him on the brief for appellee.

The opinion of the court was delivered by

SIX, J.: The defendant, Kenneth P. Seck, who was indefinitely suspended from the practice of law by this court in 1995, attacks the constitutionality of K.S.A. 21-3824, a false impersonation criminal statute.

Seck, in appealing his misdemeanor conviction under K.S.A. 21-3824, contends the statute is vague and overbroad. We disagree. Seck's conviction is affirmed.

Our jurisdiction is under K.S.A. 20-3018(c) (transfer from Court of Appeals on our own motion).

## FACTS

In early December 1997, Stephen Rose, chairman and owner of Sun Publications, received the following demand letter from Seck on a letterhead that represented Seck as an attorney and counselor at law:

"Kenneth P. Seck
ATTORNEY AND COUNSELOR AT LAW
8600 W. 95th St., Ste. 104
Overland Park, Kansas
U.S.A. 66212-3201
(913) 338-9404
(913) 642-4433 (FAX)"

"FRAUD            DECEIT
MISREPRESENTATION      INTENTIONAL INFLICTION OF
MALICIOUS LIBEL        EMOTIONAL HARM

"DEMAND FOR SETTLEMENT

"Dear Mr. Rose:

"As a proximate consequence and result of your malignment—at times, malicious—of Elaine Beckers Braun, Demand is hereby made for settlement in the Amount of One Million Dollars ($1,000,0000.00). Unless we can settle this case by NOON Friday, December 12, 1997, I will file a Lawsuit in the Johnson County District Court.

"If you have an Insurance Policy which provides coverage for intentional acts and conduct by you, your agents and employees, you should refer this Demand Letter to such company. If you are self-insured, you should call this office and advise of your status.

"Notice is hereby provided that this is a 'Kansas Nelson Letter.'

"Sincerely,
KEN SECK
(Elaine Beckers Braun's Brother)"

Rose, after consulting his attorney, sent the letter to the Johnson County District Attorney's office because he believed Seck was illegally practicing law. Seck was charged with false impersonation under K.S.A. 21-3824, a class B misdemeanor.

Seck was admitted to the Kansas Bar in 1969 and to the Missouri Bar in 1970. He was indefinitely suspended from the practice of law in Kansas at the time he sent the letter to Rose. See *In re Seck*, 258 Kan. 530, 905 P.2d 122 (1995). Seck had received two previous informal admonitions and two previous orders of published censure. He was ordered to comply with Supreme Court Rule 218 (2001 Kan. Ct. R. Annot. 276) (disbarred or suspended attorneys required to surrender license to practice; must notify each client, the courts, and opposing counsel of inability to undertake further representation and must file motion to withdraw from pending

litigation). Seck claims he was never specifically told anything by anyone associated with the Disciplinary Administrator's office regarding the use of a letterhead. Seck was disbarred in Missouri by that state's Supreme Court on September 17, 1996.

At trial, Seck admitted he knew he was not licensed to practice law when he wrote the demand letter. He agreed that all of the actions in the letter on which he based his monetary demands appeared to be personal actions with his sister as the person who was wronged. He testified that he was upset with Sun Publications and the Kansas City Star and, by the letter, was pointing out the "malignment" of his sister. Seck said Sun Publications had not engaged in fraud or misrepresentation directed towards him. According to Seck, his demand letter discussed a libel against his sister. Seck claimed he wanted to settle the case based upon "deceit [d]one to his sister." He admitted writing a similar letter to the Kansas City Star.

Elaine Beckers Braun, Seck's sister, served on the Overland Park City Council for 5 years. She became a Johnson County Commissioner in 1993. Seck had been living with his sister and her husband after his suspension from the practice of law. His sister committed suicide in April 1997. The Johnson County Commission would collect newspaper articles relating to the commissioners and give them to each of the commissioners for review. Thus, his sister was receiving weekly editorials, cartoons, and articles, which were mainly from the Sun and the Kansas City Star. Seck had kept all of the weekly summaries or weekly notes of the commission. One cartoon, which appeared in the Sun, had a caricature of his sister and other people after a bi-state meeting concerning a tax issue.

A jury convicted Seck of false impersonation. The district court did not order any jail time but, rather, suspended imposing a $1,000 fine upon certain conditions, including a requirement that Seck obtain a mental health examination.

## DISCUSSION

K.S.A. 21-3824(a) says: "False impersonation is representing oneself to be a public officer or public employee or a person licensed to practice or engage in any profession or vocation for which

a license is required by the laws of the state of Kansas, with knowledge that such representation is false."

Seck contends that K.S.A. 21-3824, criminalizing false representation, is both unconstitutionally vague and overbroad. He asserts that his prosecution was "politically inspired." Seck supports his vagueness contention by arguing:

"K.S.A. 21-3824 is vague because its wording which not only prohibits not only engaging in the practice of law, but also in one's 'profession' leaves a person of common intelligence guessing at its meaning. One who is suspended from the practice of law may as the Kansas Supreme Court has held be employed as a Law Clerk, Investigator or Paralegal. . . . [N]owhere is found a definition of what constitutes engaging in one's 'profession.' For example, it is commonly known that persons who posses[s] a Juris Doctor (and even persons who do not in some instances) may act [as] a Professor of Law, may give lectures on subjects pertinent in the 'legal' arena and may act as correspondent or consultants concerning legal issues or trials and thing[s] of that nature; all of which might be viewed as part of the legal 'profession.' Because one might debate whether these activities fall within the legal 'profession' rather [than] within the teaching, lecturing, or consulting profession, however, the statute is void for Vagueness [*sic*]. In summary, K.S.A. 21-3824, as it is worded, leaves a person of common sense guessing as to its scope and application. The statute is vague in that it lacks clarity and precision and thus, is Unconstitutional [*sic*]." .

According to Seck, the statute is vague because it not only prohibits engaging in the practice of law but also in one's profession. We reject Seck's interpretation of the statute.

Determining a statute's constitutionality involves a question of law. Our standard of review is unlimited. *State v. Engles*, 270 Kan. 530, 532-33, 17 P.3d 355 (2001).

The constitutionality of K.S.A. 21-3824 was squarely addressed in *State v. Marino*, 23 Kan. App. 2d 106, 929 P.2d 173 (1996). Marino was a law school graduate who was not a licensed practicing lawyer, although at one point in time he may have possessed a temporary permit to practice. He appeared on a local access cable program, representing himself as a practicing criminal defense and divorce lawyer. Someone called the attention of the Johnson County District Attorney's office to the program. Marino was charged with and convicted under K.S.A. 21-3824 of false impersonation of a lawyer. 23 Kan. App. 2d at 106, 108.

The *Marino* court said:

"K.S.A. 21-3824 makes it a crime to claim or represent that one is licensed to practice or engage in any profession or vocation for which a license is required in this state while knowing that such representation is false. We conclude that there is nothing vague about the definition of the crime as set forth in the statute and that no one need necessarily guess at the meaning of the statute. There is certainly nothing vague about the activity prohibited." 23 Kan. App. 2d at 109-10.

We agree. K.S.A. 21-3824 is neither void for vagueness nor overbroad.

A prohibited act under K.S.A. 21-3824 is to represent that one is licensed to practice law when one is not. There is no constitutionally protected act which is prohibited or curtailed. The statute is not constitutionally overbroad.

Seck raises six additional issues in his brief on appeal. In each instance, he simply asserts an error without providing any legal authority or argument supporting his contention. Supreme Court Rule 6.02(e) (2001 Kan. Ct. R. Annot. 35) requires an appellant's brief to contain "[t]he arguments and authorities relied upon, subdivided as to the separate issues in the appeal if more than one. Each issue shall begin with citation to the appropriate standard of appellate review." See *State v. Boyd,* 268 Kan. 600, 606, 999 P.2d 265 (2000). We need not address the six additional issues. See *Enlow v. Sears, Roebuck & Co.,* 249 Kan. 732, 744, 822 P.2d 617 (1991). Seck has abandoned the additional issues. See *State v. Valdez,* 266 Kan. 774, 784, 977 P.2d 242 (1999) (an issue which is not briefed on appeal is deemed abandoned).

Affirmed.