(239 P.3d 83)
No. 94,569

COMMERCE BANK, N.A., *Appellee*, v. CRYSTAL L. BOLANDER, EXECUTOR OF THE ESTATE OF WANDA J. BENNETT-RODGERS, Deceased, DOUGLAS R. COOK, and SANDRA R. COOK, *Appellees*,

and

HAROLD JAMES WHITTET, TRUSTEE OF THE WANDA J. BENNETT-RODGERS TRUST, dated February 19, 1998, *Appellant*.

Opinion filed April 6, 2007.

*Robert E. Keeshan*, of Scott, Quinlan, Willard, Barnes & Keeshan, of Topeka, for appellant Harold James Whittet.

*William J. Kelly*, of Independence, for appellee Commerce Bank, N.A.

Before MCANANY, P.J., PIERRON, J., and BUKATY, S.J.

PIERRON, J.: Harold James Whittet, trustee of the Wanda J. Bennett-Rodgers Trust (Trust), appeals the summary judgment decision of the district court that Commerce Bank, N.A. (Commerce), could attach assets in the Trust to satisfy its judgment entered for a promissory note Wanda executed before her death. We affirm.

On February 19, 1998, Wanda resided in Independence, Kansas, and executed the Trust. She was the beneficiary of the Trust during her lifetime and reserved the right to amend or revoke the Trust at any time. The purpose of the Trust was to provide for the educational expenses of her lineal descendants. Wanda's son, Whittet, was named as first successor trustee. The initial Trust documents indicated that the Trust property consisted of a Merrill Lynch individual retirement account (IRA) and also real estate in Montgomery County. However, the Trust was not funded with these

assets upon its execution. At the time of Wanda's death, no property was owned by the Trust.

On June 22, 2000, Wanda executed her last will and testament. The will provided for specific bequests of $2,000 to $8,000 to certain grandchildren and individuals, $10,000 to each of her three children, and assigned the residue to the Trust for educational purposes.

On May 25, 2002, Wanda executed a promissory note, payable to the order of Commerce in the principal amount of $93,314.48. The promissory note was secured by a security interest in real property and personal property. The promissory note indicated that Commerce had a right of setoff but "this does not include any IRA or Keogh accounts, or any trust accounts for which setoff would be prohibited by law."

Wanda remained in Kansas until December 2002, when she moved to Friendswood, Texas, and took all her personal belongings and effects. She contracted to sell her house in Independence. On December 6, 2002, Wanda voluntarily moved into the Park Place Retirement Home in Friendswood. She received Medicaid from the State of Texas.

Wanda died in Houston, Texas, on January 17, 2003. Upon her death, a Texas death certificate was issued. Pursuant to Wanda's will, Crystal Bolander was named as the executor of Wanda's estate (Estate), and the will was admitted for probate in April 2003. The inventory and valuation filed in the estate case listed real estate valued at $246,000, personal property valued at $10,000, and stock valued at $40,113.83, for a total valuation of $296,113.85. The valuation also listed jointly owned property in the amount of $39,986.16, and for the Trust in question it listed $7,320.11 in a Merill Lynch IRA and $205,225.69 in a Solomon Smith Barney IRA for a total value of $212,545.80 in the Trust. The petition listed Whittet as residing at 3185 N. 24th, Independence, Kansas.

On June 2, 2003, Commerce filed a chapter 60 petition seeking a money judgment against the Estate for the unpaid balance of the promissory note, plus costs and fees, and for foreclosure of its security interests and mortgage. Commerce later amended its petition to add Whittet, as trustee, as an additional defendant, claiming

that since the Trust was revocable at the time of Wanda's death, the Trust property was subject to Commerce's claim as well.

Whittet was personally served at 3185 N. 24th St., Independence, Kansas, with a summons and a copy of the petition on November 24, 2003. Whittet, as trustee, filed an answer and "counter petition" (counterclaim) in the chapter 60 action. He raised affirmative defenses, *inter alia*, that Commerce could not attach the Trust assets and that the Kansas court lacked personal jurisdiction over the Trust or any Trust property because the situs of the Trust and all property was in Oklahoma. In the counterclaim, Whittet challenged the validity of Commerce's real estate collateral claim and the legality of the promissory note.

On July 30, 2004, the Estate advised the district court that Wanda had not filed income tax returns or paid taxes for the years 2000-2003 and combined with the other liabilities the Estate was insolvent, with $94,054.42 in assets and $206,928.33 in liabilities. Commerce filed for summary judgment against the Trust in August 2004. Commerce claimed the Estate was insolvent and that under the Kansas Uniform Trust Code, K.S.A. 58a-101 *et seq.*, it was entitled to judgment against the Estate and the Trust, jointly and severally, for the full amount of the indebtedness regardless of any spendthrift clause.

The Trust filed a response to the summary judgment motion and a motion to dismiss. The Trust claimed Commerce's claim against the Trust was uncertain and the district court lacked jurisdiction. The Trust requested a dismissal claiming the Trust was not a Kansas Trust, and the Kansas Uniform Trust Code did not grant a creditor of a deceased settlor a means to collect from a revocable trust in a foreclosure action.

On January 24, 2005, the district court granted summary judgment in favor of Commerce. The court found that under the terms of the Trust instrument and the laws of Kansas, the Trust was governed by the laws of Kansas, including the Kansas Uniform Trust Code. The court held that pursuant to K.S.A. 58a-505, the assets of the Trust were available to satisfy Commerce's judgment claim. The court entered judgment against the Trust, reduced by the amount of proceeds from the sale of Commerce's secured col-

lateral. The court also froze the assets of the Trust with a value not less than the unpaid balance of the judgment entered in favor of Commerce.

On February 3, 2005, the Trust filed a motion for reconsideration, arguing the district court improperly froze the assets of the Trust and that almost all of the assets of the Trust were funds in IRAs and the IRA funds were exempt from any judgment of a creditor of the Trust. The district court denied the Trust's motion for reconsideration. The court also found the Trust assets exceeded $200,000 and Commerce's claim as of that day was $76,199.82. The court held there were substantial assets in the Trust over and above the value of Commerce's claim, which were unaffected by the freeze order. The court held the Trust had failed to offer any evidence to show that the Trust, trustee, or the beneficiaries of the Trust were in any way harmed by the freeze order.

On April 7, 2005, Commerce filed a request for garnishment for $83,956.88 from the Trust assets, specifically from Smith Barney Citigroup. In response, on April 27, 2005, the Trust filed a motion to determine Trust property subject to Commerce's judgment. The Trust claimed there was no property in the Trust at the time of Wanda's death but that after her death two of her IRA accounts became Trust assets, Smith Barney on May 31, 2003, and Merrill Lynch on September 27, 2003. The Trust claimed the relevant portions of the Kansas Uniform Trust Code only applied to Trust property in a trust at the time of the settlor's death, and in this case, the Trust received the property after Wanda's death. The district court rejected the Trust's claims by ruling:

"5. K.S.A. 58a-505(a)(3), as interpreted by the court, does not shelter from the plaintiff's judgment the funds received by the Trust as beneficiary of the settlor's IRAs. The phrase "at the settlor's death," refers to whether or not a trust is revocable at the time of the settlor's death. The said phrase does not limit those assets of a trust which are subject to creditor's claims.

"6. The funds received by the Trust, as beneficiary of the settlor's IRA, are not exempt assets for the following reasons:

A. The exemption which applied to the IRAs during the settlor's lifetime did not survive her death.

B. The Trust is not owner of an IRA but rather is the recipient of funds as the beneficiary of the settlor's IRA.

C. The Trust is not a natural person and the statutory exemptions which apply to natural persons do not apply to the Trust."

The Trust appeals.

The Trust first argues the district court did not have jurisdiction over the Trust when Wanda died testate in Texas and the trust assets consisted entirely of IRA amounts transferred after Wanda's death to an Oklahoma trustee.

The question of jurisdiction is subject to review at any time in the proceedings. Whether jurisdiction exists is a question of law over which the court's scope of review is unlimited. *Foster v. Kansas Dept. of Revenue*, 281 Kan. 368, 369, 130 P.3d 560 (2006).

K.S.A. 58a-107 sets forth the standards under the Kansas Uniform Trust Code by which we measure this case:

"The meaning and effect of the terms of trust are determined by:

(1) The law of the jurisdiction designated in the terms unless the designation of that jurisdiction's law is contrary to the law of the jurisdiction having the most significant relationship to the matter at issue; or

(2) in the absence of a controlling designation in the terms of the trust, the law of the jurisdiction having the most significant relationship to the matter at issue."

Regarding administration of a trust under the Kansas Uniform Trust Code, K.S.A. 58a-108 provides the following guidelines:

"(a) Without precluding other means for establishing a sufficient connection with the designated jurisdiction, terms of a trust designating the principal place of administration are valid and controlling if:

(1) A trustee's principal place of business is located in or a trustee is a resident of the designated jurisdiction; or

(2) all or part of the administration occurs in the designated jurisdiction."

The Trust had a clear and unambiguous clause providing for the application of Kansas law. Article X(D) of the Trust provides: "The validity and construction of this agreement shall be determined and governed in all respects by the laws of the State of Kansas. The Trust powers and provisions herein contained shall be administered, exercised, and carried into effect according to the laws of the such state."

"If the language of a written instrument is clear and can be carried out as written, there is no room for rules of construction. [Citation omitted.] Where contract terms are plain and unambiguous, the intention of the parties and the

meaning of the contract are determined from the contract itself. [Citation omitted.]" *Zukel v. Great West Managers, LLC*, 31 Kan. App. 2d 1098, 1101, 78 P.3d 480 (2003), *rev. denied* 277 Kan. 928 (2003).

Consequently, the only jurisdictional question remaining in this case, pursuant to K.S.A. 58a-107, is whether the designation of Kansas law is contrary to the law of the jurisdiction having the most significant relationship to the matter at issue. The theme of the Trust's argument is that we live in a mobile society and that the beginning situs of a trust would normally be the domicile of the trust originator, but it is unreasonable to believe the situs of a trust involving personal property must remain the settlor's original domicile. See *In re Saddy*, 129 N.Y.S.2d 163 (1954) (in motion for change of successor trustee, New York court declined jurisdiction where settlor was from New York but all other facts pointed to Pennsylvania, including the trustees and the corpus of the trust).

The Trust claims that at the time of her death, Wanda was a resident of Texas and Harold was a resident of Oklahoma. The Trust also claims the language in Article X(D), referring to the "law of the such state," is ambiguous. The Trust cites several cases in support of its argument that courts have "gone outside" the trust designation of controlling law. See *In re Estate of McMillian*, 603 So. 2d 685 (Fla. Dist. App. 1992); *Matter of Marcus*, 191 Misc. 2d 497, 742 N.Y.S.2d 777 (2002). *McMillian* and *Marcus* are consistent with Kansas law in every respect. Under K.S.A. 58a-107, the court is free to go outside the choice of law designation in a trust in establishing the jurisdiction "having the most significant relationship to the matter at issue."

We recognize the Trust's arguments that both Texas and Oklahoma, similar to Kansas, have statutory provisions to allow for change of the place of administration to their state. However, we must first determine which state has the most significant relationship to the matter at issue before we determine which law to apply. See K.S.A. 58a-107. The Trust claims that even if Texas was not the original state of administration, Texas law allows for change of the place of administration. See Uniform Trust Code § 108; Tex. Property Code Ann. §§ 115.001-115.002 (2007). Compare K.S.A. 58a-108(c)-(f). The Trust seeks application of Texas law because it

claims Commerce would not be able to reach the assets of the Trust after Wanda's death and that IRA benefits are exempt from execution in Texas. See *FCLT Loans, L.P. v. Estate of Bracher*, 93 S.W.3d 469, 484-85 (Tex. Civ. App. 2002) (court stated that because the issue had not been fully briefed, the court had no opinion whether a creditor could satisfy claims from the trust after the settlor's death); *Lozano v. Lozano*, 975 S.W.2d 63 (Tex. Civ. App. 1998) (exemption of IRA benefits, but not dealing with death of settlor); Tex. Property Code Ann. §§ 42.0021(a), 111.001-115.017 (2007).

The Trust also claims that Oklahoma law could also apply in this situation. See 60 Okla. Stat. Annot. Property-Uses & Trusts § 175.23(a) (2006 Supp.) (district court had original jurisdiction to construe the provisions of any trust instrument and determine the applicable law). The Trust contends Whittet was an Oklahoma resident, and the IRAs are administered in Oklahoma as well. The Trust claims that IRAs are exempt from garnishment in Oklahoma. See *Greening Donald v. Okla. Wire Rope Prod.*, 766 P.2d 970, 972 (Okla. 1988) (IRAs are exempt from creditors, but the case does not address exemption after death of settlor); *Matter of Estate of Patee*, 664 P.2d 1035 (Okla. 1983) (named beneficiary of retirement account takes the interest free from any claims that might be filed against decedent's estate in the probate proceedings; not a trust case).

Commerce argues that if the Trust's argument is accepted that the Trust's principal place of administration is determined by the residence of the trustee, then even though Wanda was a Texas resident at the time of her death, administration of the Trust moved back to Kansas upon her death where the trustee, Whittet, was served with process while still a resident of Kansas and serving as trustee. See K.S.A. 58a-108 (administration in jurisdiction where trustee a resident).

The resolution of the question of the state with the most significant relationship to the Trust under K.S.A. 58a-107 is both a question of fact and law. As one would expect this issue is very fact specific since each determination under K.S.A. 58a-107 presents a unique set of facts. The function of an appellate court is to deter-

mine whether the trial court's findings of fact are supported by substantial competent evidence and whether the findings are sufficient to support the trial court's conclusions of law. Substantial evidence is such legal and relevant evidence as a reasonable person might accept as sufficient to support a conclusion. *U.S.D. No. 233 v. Kansas Ass'n of American Educators*, 275 Kan. 313, 318, 64 P.3d 372 (2003). An appellate court's review of conclusions of law is unlimited. *Nicholas v. Nicholas*, 277 Kan. 171, 177, 83 P.2d 214 (2004).

The Trust's argument regarding Texas is based on the isolated fact that Wanda had a connection to Texas because she spent the last 6 weeks of her life in a healthcare facility in Friendswood, Texas, likely to reside closer to her daughter, Georgia Hughs. The Trust's argument regarding Oklahoma jurisdiction is Whittet's claim that some time after assuming the duties of trustee, he moved to Oklahoma and that Wanda's IRA representative had an office in Bartlesville, Oklahoma.

Contrary to Texas and Oklahoma, there are several facts in this case showing the significant relationships and connections of this case to the state of Kansas: (1) clear intent by Wanda in providing unambiguous language in the Trust document for administration pursuant to laws of Kansas; (2) the Trust originated in Kansas, was revocable by Wanda, and Wanda was the trustee while living in Kansas for nearly 5 years; (3) the Trust document gave the Trustee powers pursuant to the Kansas Uniform Trustees Powers Act (K.S.A. 58-1201 *et seq.*; repealed L. 2002, ch. 133); (4) the Trust documents indicated the Trust assets included Kansas real estate; (5) the Trust was the residual beneficiary under Wanda's will probated in Montgomery County, Kansas; (6) Wanda's spouse at the time of her death was a Kansas resident; and (7) Whittet was still a Kansas resident when the petition for probate was filed and when he was personally served with process.

We also recognize that Whittet, as trustee, has submitted to the jurisdiction of the court by filing an answer and also a counterclaim. Whittet voluntarily submitted himself to the jurisdiction of the trial court by his appearance in this case and by the counter request to nullify the promissory note. Jurisdiction over a party can be ac-

quired only by issuance and service of process in the method prescribed by statute or by voluntary appearance. See *Myers v. Board of Jackson County Comm'rs*, 280 Kan. 869, 875-77, 127 P.3d 319 (2005).

"A party is not permitted to invoke the jurisdiction and power of a court for the purpose of securing important rights from an adversary through its judgment, and then, after obtaining the benefits sought, to repudiate or question the validity of that adjudication on the ground the court was without jurisdiction." *Aguilera v. Corkill*, 201 Kan. 33, 38, 439 P.2d 93 (1968).

We find the district court did not err in holding that pursuant to the terms of the Trust and the Kansas Uniform Trust Code, Kansas had jurisdiction to resolve the issues in this case.

The Trust also contends that even if Kansas had jurisdiction over the Trust, Commerce has not provided any authority (1) for a direct action against the Trust in the foreclosure case and (2) for the claim of joint and several liability, allowing Commerce to immediately reach trust assets, regardless of other estate assets and claims. The Trust provides no argument in its appellate brief in support of its claims. These issues are incidentally raised at best. An issue which is incidentally raised on appeal need not be considered by an appellate court. See *State v. Hunt*, 275 Kan. 811, 821, 69 P.3d 571 (2003); *State v. Seck*, 274 Kan. 961, 965, 58 P.3d 730 (2002).

The substantive issue in this appeal is the Trust's argument that the district court erred in allowing Commerce to attach and freeze the IRA assets in the Trust.

There is no dispute by any of the parties that the Trust was clearly a revocable trust. K.S.A. 58a-505(a)(1) provides that during the lifetime of the settlor, the property of a revocable trust is subject to the claims of the settlor's creditors. The critical statute in this case is K.S.A. 58a-505(a)(3), which controls the limitations on assets held in trust:

"After the death of a settlor, and subject to the settlor's right to direct the source from which liabilities will be paid, the property of a trust that was revocable at the settlor's death is subject to claims of the settlor's creditors, costs of administration of the settlor's estate, the expenses of the settlor's funeral and disposal of remains, the homestead, homestead allowance, the elective share rights of the surviving spouse pursuant to K.S.A. 59-6a209, and amendments thereto, and stat-

utory allowance to a surviving spouse and children to the extent the settlor's probate estate is inadequate to satisfy those claims, costs, expenses, and allowances."

The Trust claims that its accounts became irrevocable after Wanda's death for benefit of the educational needs of her grandchildren and great grandchildren. The Trust claims case law supports its position, but the express language of K.S.A. 58a-505 dictates otherwise. As stated earlier, the court in *FCLT Loans*, 93 S.W. 3d at 469, 484-85, specifically noted that it was not addressing the issue of satisfying claims from the trust after the settlor's death; see also *Greenwich Trust Co. v. Tyson*, 129 Conn. 211, 27 A.2d 166 (1942) (application of Connecticut law). The Trust's use of *Taliaferro v. Taliaferro*, 252 Kan. 192, 194, 843 P.2d 240 (1992), is inappropriate. *Taliaferro* involved the situation of a trust and a surviving spouse's decision to file an election against the will. *Taliaferro* did not involve any creditors of the Trust. The spousal election issue is a layer of the onion that is unnecessary for us to peel back at this time. See also *McCarty v. State Bank of Fredonia*, 14 Kan. App. 2d 552, Syl. ¶¶ 1, 7, 795 P.2d 940 (1990) (held that an IRA is construed as a revocable inter vivos trust and the beneficiary designation of a revocable inter vivos trust created by a spouse who dies testate is subject to the rights of a nonconsenting survivor spouse); *Spencer v. Spencer*, 71 Conn. App. 475, 802 A.2d 215 (2002) (child support situation, whether trust assets, primarily IRA benefits, available in modification of child support order).

The Trust states there was no property in the Trust immediately prior to Wanda's death. However, no party has challenged whether the IRAs are actually trust property or should have been included in the Estate. Consequently, we will not address that question. The Trust contends that K.S.A. 58a-505 should not permit Commerce to reach the property created due to Wanda's death on the theory that at the instant of her death, the IRA assets were transferrable because at the same instant of Wanda's death, the trust would then be an irrevocable trust outside the reach of K.S.A. 58a-505. Commerce claims that the Trust's argument is disingenuous since the trustee considers the IRA funds to be trust property for all other purposes, which would include paying the trustee's fee and expenses and making distributions to the trust beneficiaries.

The district court's decision is an application of the clear unambiguous intent of the legislature in K.S.A. 58a-505(a)(3) of making the assets of a revocable trust "subject to the claims of the settlor's creditors." A revocable living trust, such as the trust in this case, is a trust established during the settlor's lifetime in which the settlor reserves the right to alter, amend, or revoke the trust and may retain the right during his or her lifetime to direct the disposition of principal and income. At the death of the settlor, the trust assets are disposed of in accordance with the terms of the trust document. When a trust is created for the settlor's own benefit, the settlor's creditors can reach any trust assets and, for purposes of the present case, those nonexempt assets available to the settlor. See *In re Johannes Trust*, 191 Mich. App. 514, 518, 479 N.W.2d 25 (1991); *Vanderbilt Credit Corp. v. Chase Manhattan Bank*, 100 App. Div. 2d 544, 546, 473 N.Y.S.2d 242 (1984); Restatement (Second) of Trusts 156, p. 326 (1959). This rule promotes a valid public policy that a person ought not to be able to shelter his or her assets from creditors in a discretionary trust of which he or she is the beneficiary and thus be able to enjoy all the benefits of ownership of the property without any of the burdens. See *In re Johannes Trust*, 199 Mich. App. at 518.

Wanda's power to amend or revoke the trust, or to direct payment from it, obviously died with her, and the remainder beneficiaries' interests in the Trust became vested. There is precedent in other jurisdictions holding that when the settlor of a revocable living trust dies, the property is no longer subject to the settlor's debts. See *Schofield v. Cleveland Trust Co.*, 135 Ohio St. 328, 333-34, 21 N.E.2d 119 (1939) (relying on interpretation of statute). We believe that under Kansas statutory law and persuasive authority from other states, the better argument is to the contrary. See *ITT Commercial Finance Corp. v. Stockdale*, 25 Mass. App. 986, 988, 521 N.E.2d 417 (1988) (In view of the settlor's power to amend and revoke the trust and to substitute beneficiaries, a power retained until death, summary judgment could also rest on the creditor's right to reach the trust property as if it had been the debtor's own.); *Johnson v. Commercial Bank*, 284 Or. 675, 680-81, 588 P.2d 1096 (1978).

California law on this subject is similar to Kansas. California's Probate Code § 19001 (2007), provides:

"(a) Upon the death of a settlor, the property of the deceased settlor that was subject to the power of revocation at the time of the settlor's death is subject to the claims of creditors of the deceased settlor's estate and to the expenses of administration of the estate to the extent that the deceased settlor's estate is inadequate to satisfy those claims and expenses."

In *Dobler v. Arluk Medical Center Industrial Group, Inc.*, 89 Cal. App. 4th 530, 107 Cal. Rptr. 2d 478 (2001), the lower court had entered an order directing payment of the unsatisfied portion of a judgment entered against the decedent from assets of the decedent's revocable inter vivos trust which consisted primarily of life insurance benefits. The court concluded that California Probate Code § 19001 authorized payment to the judgment creditor from trust assets without requiring the creditor to first sue the trustees.

The *Dobler* court affirmed, holding that a judgment against a decedent becomes a valid claim against both the decedent's estate and, where necessary, against assets placed in an inter vivos trust that were subject to revocation during the settlor's lifetime. 89 Ca. App. 4th at 540. The *Dobler* court also commented on the proper adjudication of claims against the trust. To be entitled to invoke the payment procedure of Probate Code § 19001, a judgment creditor need only establish it has a money judgment against the decedent. Thereafter, the judgment is paid in the normal course of administration of the trust. Thus, it was unnecessary for the creditor to either amend the complaint to name the trust or trustees as parties defendant or, in the alternative, to file a separate action against the trustees. 89 Cal. App. 4th at 539-41.

Based on K.S.A. 58a-505, we find the district court did not err in concluding that the Trust was subject to the judgment obtained by Commerce.

Next, the Trust claims that if K.S.A. 58a-505(a)(3) allows Commerce to attach its assets, it does not allow the attachment of Wanda's IRA accounts which were expressly excluded in the bank note, were exempt under K.S.A. 60-2308(b), and did not come into the Trust until after Wanda's death.

There is no question in this case that IRA benefits are statutorily "exempt from any and all claims of creditors of the beneficiary or participant." K.S.A. 60-2308(b); see *Bartlett Cooperative Ass'n v. Patton*, 239 Kan. 628, Syl. ¶¶ 2, 3, 722 P.2d 551 (1986) (IRAs are precluded from garnishment under Kansas law for proceedings filed on or after July 1, 1986). The promissory note complied with K.S.A. 60-2308(b), where it limited the right of setoff by expressly excluding any IRA or Keogh accounts or any trust accounts where setoff would be prohibited by law. Commerce could not reach the IRAs during Wanda's life. The question in this case is whether Commerce can reach the IRA benefits after Wanda's death where the beneficiary of the IRA benefits is the Trust.

Commerce argues, and the district court held, the exemptions that surround an IRA or its benefits to the settlor are personal to the settlor. We agree. The exemption is not transferable and disappears upon the death of the settlor, except for certain statutory exceptions such as the homestead rights and various real and personal property. See K.S.A. 59-401; K.S.A. 59-403. In *In re Vary Estate*, 401 Mich. 340, 350, 258 N.W.2d 11 (1977), *cert. denied* 434 U.S. 1087 (1978), the court applied this rationale in the context of Social Security benefits:

"We think the same reasoning applies here. If the Congress intended to exempt benefits such as paid to Mrs. Vary from legal process even when the recipient died, it would have said so or would have used different wording. Both *Philpott* [, 409 U.S. 413 (1973),] and *Porter* [, 370 U.S. 159 (1963),] indicate that such benefits are for support of living people with continuing needs. Exemption is a protection that does not survive the individual. It is a personal protection which dies with the beneficiary."

Black letter law also supported the personal nature of an exemption. 31 Am. Jur. 2d, Exemptions § 238 (2002), provides:

"The right to an exemption exists solely by virtue of express constitutional or statutory provisions. Accordingly, any determination of persons or classes of persons who may claim exemptions in any particular state must be directed to that state's constitution and statutes and, unless the debtor claiming an exemption is one of the persons or classes of persons therein named, his claim cannot prevail, because a debtor's right to an exemption is a personal one which does not survive the death of the person in whose favor it exists."

See also 31 Am. Jur 2d, Exemptions § 239 (which provides that the right of exemption is limited to a natural, rather than a legal, person).

·The majority of the cases cited by the Trust involve the exemption of IRAs during the lifetime of the settlor and do not address the exemption after the settlor's death. *Central Bank v. Hickey*, 238 Conn. 778, 680 A.2d 298 (1996); *Dunn v. Doskocz*, 590 So. 2d 521 (Fla. Dist. App. 1991); *Jakubik v. Jakubik*, 208 Ill. App. 3d 119, 566 N.E.2d 808 (1991); *C.P. v. Piscataway Tp. Bd. of Educ.*, 293 N.J. Super. 421, 681 A.2d 105 (1966); *Greening Donald v. Okla. Wire Rope Prod.*, 766 P.2d 970, 972 (Okla. 1988); *Lozano v. Lozano*, 975 S.W.2d 63 (Tex. Civ. App. 1998).

We recognized *Matter of Gallet*, 196 Misc. 2d 303, 765 N.Y.S.2d 157 (2003), where the New York court concluded that because of the decedent's lack of access to retirement plans during his life and the presumed intent of the New York Legislature to continue the protection of exempt assets following death, the decedent's federal thrift saving plan and IRA were not subject to creditor's claims. 196 Misc. 2d at 310-11. *Gallet* is based on New York legislation that the rights of beneficiaries of exempt assets "shall not be impaired or defeated by any statute or rule of law governing the transfer of property by will, gift or intestacy." See N.Y. Estates, Powers and Trusts Law § 13-3.2 (McKinney 2001). *Gallet* also relied on legislative history providing:

"Hence there is an obvious relation between exemptions and provisions making administration unnecessary . . . . To the extent that death benefits under pension and retirement plans are exempt, there seems to be no harm in permitting their payment to others than the personal representative. [Citation omitted.]" 196 Misc. 2d at 308-09.

The Trust raises a hypothetical scenario concerning whether Commerce would be able to make the same argument concerning other federally exempt benefits that would come into a revocable trust after the death of the recipient simply because they pass to the trust. The Trust argues the answer is no. The problem with the Trust's cited Kansas authority is that it again does not address the status of the exemption after death of the settlor. The cases do not involve a decedent's property or trust. See *Decker & Mattison Co.*

*v. Wilson*, 273 Kan. 402, 409, 44 P.3d 341 (2002) (depositing worker compensation benefits in a joint account does not, by itself, destroy the exemption for seizure or sale); *E.W. v. Hall*, 260 Kan. 99, Syl. ¶¶ 1, 2, 917 P.2d 854 (1966) (held that Social Security benefits were exempt from attachment or garnishment and that Social Security benefits did not lose their exempt status when they were invested in certificates of deposit); *Younger v. Mitchell*, 245 Kan. 204, 211-12, 777 P.2d 789 (1989) (concerned the exemption of monies in a bank account that consisted solely of the defendant's Social Security and veterans disability benefits).

The Trust argues there is no policy reason why property received by a revocable trust as a result of the death of the settlor, which is or was otherwise exempt from the claims of the settlor's creditors, suddenly becomes subject to the claims of the settlor's creditors. The Trust makes a comparison to payable on death accounts and joint tenancy accounts being accessible to creditors during the life of the settlor but not upon death. See *In re Estate of Harrison*, 25 Kan. App. 2d 661, 669, 967 P.2d 1091 (1998), *rev. denied* 267 Kan. 885 (1999) (property held by a decedent and another in joint tenancy passes to the survivor, and the property is not part of the decedent's probate estate); *Snodgrass v. Lyndon State Bank*, 15 Kan. App. 2d 546, 811 P.2d 58, *rev. denied* 249 Kan. 776 (1991) (payment on death account). The Trust claims that if Wanda had named specific beneficiaries of the IRA, then the IRA proceeds would automatically pass at her death to the named beneficiaries. See *Estate of Davis*, 171 Cal. App. 3d 854, 217 Cal. Rptr. 734 (1985); *In re Estate of McIntosh*, 146 N.H. 474, 773 A.2d 649 (2001); compare K.S.A. 40-414 (life insurance benefits are protected for any "person or persons" having an insurance interest in the life of the insured); *In re Douglas*, 59 Bankr. 836 (Bankr. D. Kan. 1986). We do not challenge this specific argument by the Trust. We realize the benefit of naming specific individuals as beneficiaries of an IRA. However, that is not the estate planning devise selected by Wanda. Instead, Wanda named her revocable Trust as the beneficiary of her IRAs, and the legislature has determined that assets in a revocable trust are subject to the claims of creditors at the death of the settlor. K.S.A. 58a-505.

The Trust argues that protecting Commerce in this situation stands the law upside down by making assets which are exempt during Wanda's lifetime available for creditors who have not exercised or attempted to exercise any rights during Wanda's lifetime, but allows assets such as joint tenancy accounts or pay on death accounts to be exempt from creditors. The Trust claims this result is inconsistent with the United States Supreme Court's recent opinion in *Rousey v. Jacoway*, 544 U.S. 320, 161 L. Ed. 2d 563, 125 S. Ct. 1561 (2005). We find the Trust's argument unpersuasive. Again, *Rousey* involved whether a Chapter 7 bankruptcy petitioner could exempt assets in a IRA from the bankruptcy estate pursuant to 11 U.S.C. § 522(d)(10)(E) (2000 ed. and Supp. II). The *Rousey* Court held that IRAs can be so exempted. 544 U.S. at 322. However, *Rousey* provides no authority on exemption of the IRA after the settlor's death or for assets held in trust.

The Trust argues IRAs remain IRAs in payout status. While this may be true in a inter vivos situation, the result is not the same upon the death of the settlor. In fact, the federal bankruptcy code makes a distinction between an IRA beneficiary and an inherited IRA beneficiary. The court in *In Re Navarre*, 332 Bankr. 24, 30-31 (Bankr. M. D. Ala. 2004), stated:

"The question becomes whether an inherited IRA is equivalent to an IRA for purposes of determining whether it is exempt from the bankrupt estate. Examination of the Internal Revenue Code would suggest that it is not because the tax code treats an inherited interest different than an IRA. See, 26 U.S.C. § 408(d)(3)(C) (which distinguishes 'inherited individual retirement accounts' from 'individual retirement accounts'). For this reason an 'inherited individual retirement account' does not fit within the definitional scope of § 19-3-1 and therefore, it is not exempt from the bankrupt estate.

"The Court relies upon *Sims* [, 241 Bankr. 467 (Bankr. N.D. Okla. (1999)], recognizing that it is decided under an Oklahoma exemption statute. The Court in *Sims* found that an IRA is exempt from the bankrupt estate as a matter of Oklahoma law. Similarly, an IRA account owned by a debtor who files bankruptcy in Alabama is likewise exempt. The Court in *Sims* examined 26 U.S.C. § 408(d)(3)(C) and concluded that an inherited individual retirement account is different than an individual retirement account and for that reason is not exempt. This Court does not rely upon the examination of Oklahoma law undertaken by the Court in *Sims* but rather it does agree with its conclusion, which is based upon its examination of the Internal Revenue Code, that an inherited IRA is

sufficiently different from an IRA so as to preclude its exemption from the bankrupt estate. See also, *In re Greenfield*, 289 B.R. 146, 150 (Bankr. S.D. Cal. 2003) (inherited IRA account not exempt under California statute)."

The district court's decision in this case does not stand the law upside down under the Kansas Uniform Trust Code. The assets in the Trust are subject to the claims of Wanda's creditors pursuant to K.S.A. 58a-505. Although Wanda's IRA benefits were not available to her creditors during her lifetime, they are available to her creditors upon her death because she placed them in an inter vivos revocable trust.

The Trust finally argues the district court erred in attaching and freezing trust assets prior to the completion of the foreclosure action and before the estate had been fully administered. Considering the lack of prejudice resulting from attachment of trust assets or the freeze order, the Trust's argument is more a policy complaint for the effective administration of a probate estate. The Trust insists that to allow any creditor to join a trust in a lawsuit prior to the outcome of a foreclosure action and probate process threatens the orderly distribution of estates and jeopardizes all trust distributions in a companion estate situation.

Commerce made a proper demand against the Estate by filing its Chapter 60 action. See K.S.A. 59-1303; K.S.A. 59-2238(2). Commerce later amended its petition to include the Trust as a defendant in the Chapter 60 action. The district court entered judgment against the Estate on December 21, 2004, for the amount of its claim. It is undisputed that documents filed in Wanda's probate case on December 2, 2004, clearly showed the insolvency of her Estate. Consequently, although the probate proceedings were not completed by January 24, 2005, there is no dispute the Estate would be insufficient to pay Commerce's claim on the date when the district court entered judgment against the Trust making it jointly and severally liable with the probate Estate for Commerce's claim.

The district court was within its authority to freeze those assets in the Trust sufficient to pay Commerce's judgment in order to counter the risk that the trustee would deplete the assets and prevent Commerce from satisfying its judgment. See *General Building*

*Cont., L.L.C. v. Board of Shawnee County Comm'rs*, 275 Kan. 525, 542, 66 P.3d 873 (2003) (the establishment of a bona fide risk to defendants' ability to pay a judgment satisfies the criteria of a " 'probable right' " to the injunctive relief sought and a " 'probable danger' " of irreparable injury if that injunctive relief is not granted).

The parties have differing interpretations of K.S.A. 58a-505(a)(3). Commerce argues there is no language in K.S.A. 58a-505(a)(3) compelling a creditor to first exhaust all remedies against a decedent's estate before the creditor can make a claim against a decedent's trust. The Trust suggests that at most a revocable trust is liable under K.S.A. 58a-505 for the settlor's debts only to the extent the probate estate is insufficient and not jointly and severally liable as an original party for any and all debts. The Trust cites a comment to the Uniform Trust Code § 505(a)(3) (2000):

"However, in accordance with traditional doctrine, the assets of the settlor's probate estate must normally first be exhausted before the assets of the revocable trust can be reached. This section does not attempt to address the procedural issues raised by the need first to exhaust the decedent's probate assets before reaching the assets of the revocable trust."

The Trust also cites K.S.A. 59-1303 of the Kansas Probate Code concerning a creditor with a secured claim:

"When a claimant holds any security for his or her demand, it may be allowed, conditioned upon the claimant surrendering the security or upon the claimant exhausting the security; it shall be allowed for the full amount found to be due if the security has been surrendered, or for any remaining amount found to be due if the security has been exhausted."

In conjunction with K.S.A. 59-1303, the Trust cites cases addressing the statute holding that a creditor can make a demand against the decedent's estate and have the same allowed in full, provided the creditor surrenders the security, or the creditor can exhaust the security and make a claim for any deficiency remaining due, but not both. See *In re Estate of Dahn*, 204 Kan. 535, 464 P.2d 238 (1970); *In re Estate of Klein*, 166 Kan. 334, 201 P.2d 633 (1949). Commerce distinguishes *Dahn* and *Klein* as only providing that a secured claim may not be *allowed* without the claimant first surrendering or exhausting its security.

Commerce states that the Trust was the residuary beneficiary of the Estate which created a unchanged net result to the Trust even if claims were paid by the Trust. Further, Commerce states that the fees, expenses, and IRS claims against the Estate exceeded the assets of the Trust such that no part of Commerce's claim was paid by the Estate. Consequently, had the district court waited until final settlement of the Estate, the result would have been the same.

Although we understand the necessity of efficient resolution of claims against a decedent's estate, we find this case unique in that the district court had clear evidence that the Estate was insolvent and that no part of Commerce's claim would be paid by the Estate before the district court ever entered judgment against the Trust or froze the Trust assets. Even if we were to find the district court erroneously froze assets in the Trust equal to Commerce's claim, the error was harmless. Harmless error is error which does not prejudice the substantial rights of a party. It affords no basis for reversal of a judgment and must be disregarded. *Smith v. Printup*, 262 Kan. 587, 603, 938 P.2d 1261 (1997). The Trust does not present any evidence to counter the district court's finding that neither the Trust, the Trustee, nor any of the beneficiaries were harmed by the freeze order. There is no evidence disputing the facts that the Estate was insolvent, the Trust had assets in excess of $200,000, and Commerce's claims were approximately $80,000.

Affirmed.