NOT DESIGNATED FOR PUBLICATION

No. 113,539

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

BRIAN NORDHUS,
*Appellant*,

v.

KANSAS DEPARTMENT OF REVENUE,
*Appellee*.

MEMORANDUM OPINION

Appeal from Saline District Court; PAUL J. HICKMAN, judge. Opinion filed February 26, 2016. Affirmed.

*Julie McKenna*, of McKenna Law Office, P.A., of Salina, for appellant.

*Donald J. Cooper*, of Legal Services Bureau, Kansas Department of Revenue, for appellee.

Before MALONE, C.J., PIERRON, J., and WALKER, S.J.

*Per Curiam*: Brian Nordhus appeals from the district court's decision affirming the action of the Kansas Department of Revenue in suspending his driver's license. Finding no error, we affirm the suspension.

FACTS

Around 8 a.m. on July 4, 2011, Deputies Jacob Scoville and Jeremy Trostle came upon Nordhus asleep in his vehicle on an unpaved country road in Saline County. According to Trostle, when they arrived on the scene Nordhus' car was illegally parked in

1

the northbound lane of the road, blocking traffic in that direction. Trostle testified that the car's engine had been running and that he had approached the passenger side of the car while Scoville approached the driver's side. Trostle stated that Nordhus had been asleep in the driver's seat, not wearing a seatbelt. The passenger in the car was also asleep but was wearing her seatbelt, and there was an open beer can on the passenger side of the dashboard.

Trostle testified that Scoville had knocked on the driver's side window, awakening Nordhus, and asked him to turn the engine off; Nordhus complied. According to Trostle, Scoville then asked Nordhus if he had been drinking, and Nordhus said, "[N]o." Trostle testified that Nordhus' "no" had sounded slurred. Trostle testified that he had then directed his attention toward the passenger, asking her if she had consumed any alcohol and to step out of the vehicle. Trostle stated that when he had opened the car door, an "almost overwhelming" smell of alcohol came from inside the car. While Scoville was performing field sobriety tests on Nordhus, Trostle was involved with the passenger and was too far away to hear anything that happened during Nordhus' tests. Scoville did not testify at the district court hearing, but his certification on the DC-27 form concerning his actions and findings was admitted into evidence by the court.

According to Nordhus, he had been fishing and camping nearby and had driven his car to the location of the traffic stop. He said he had parked the car there around 1 a.m. because it was foggy and had then fallen asleep. Nordhus testified that at the time of the traffic stop, contrary to what Trostle said, his engine had not been running. He stated that he had had "more than one" beer the day before but had stopped drinking around midnight. He said he had not been drinking in his car.

Nordhus also testified about the field sobriety tests, although he had some difficulty recalling the specifics. He said that first he had done a "straight line test" in which Scoville spray painted a line on the unpaved road and asked Nordhus to take seven

or nine steps on the line, turn around, and walk back. Scoville also asked Nordhus to stand on one leg for 30 seconds, and Nordhus stated that he had swayed a bit and took some small hops while doing so. He claimed that he had been unable to easily stand on one leg because of a back injury, but he was not able to provide any evidence of that injury other than his testimony. On direct examination, Nordhus stated that Scoville had also given him an "ABC" test; but on cross-examination, he said he had not had that test after all. Nordhus stated that he had refused to take a preliminary breath test. Scoville arrested Nordhus and took him to the police station.

Nordhus testified that he had taken a breathalyzer test shortly after arriving at the station. He stated that he had been with Scoville for at least the 20 minutes before the breathalyzer test and had not had any alcohol in those 20 minutes. Nordhus failed the breathalyzer test.

Based on the test failure, Scoville completed a certification and notice of suspension, known by its form number, the DC-27. The district court admitted the DC-27 as evidence over Nordhus' objection. Nordhus does not challenge the admission of this evidence on appeal. The DC-27 stated that a traffic violation—being parked in the road—was the reason for the initial stop. The DC-27 then listed the following facts to support Scoville's reasonable grounds to believe that Nordhus had been operating a vehicle while under the influence of alcohol: odor of alcoholic beverages, alcoholic beverage containers found in the vehicle, failed sobriety tests, slurred speech, bloodshot eyes, difficulty in communicating, and poor balance or coordination. The DC-27 also confirmed that the officer provided Nordhus with the required oral and written notices, followed the correct testing procedures, and served the DC-27 on Nordhus.

The district court affirmed the suspension of Nordhus' license, finding that Scoville had reasonable grounds to believe Nordhus had been operating a motor vehicle under the influence of alcohol, that Scoville followed the required procedures for the

3

breath-alcohol test, that Scoville provided and read the required implied consent notices to Nordhus, and that Nordhus was properly served with the DC-27.

Nordhus has appealed to this court.

ANALYSIS

Nordhus' sole argument on appeal is that the evidence presented at the district court was not sufficient to support the court's conclusion that Scoville had reasonable grounds to believe that Nordhus was operating a vehicle while under the influence of alcohol.

Any person who operates or attempts to operate a vehicle in Kansas is "deemed to have given consent . . . to submit to one or more tests of the person's blood, breath, urine or other bodily substance to determine the presence of alcohol or drugs." K.S.A. 2015 Supp. 8-1001(a). A law enforcement officer shall request one of these tests if the officer has reasonable grounds to believe the person was operating a vehicle while under the influence and the officer has arrested or otherwise taken the person into custody for any offense involving driving under the influence. K.S.A. 2015 Supp. 8-1001(b)(1)(A). The Kansas Supreme Court has held that "reasonable grounds" is strongly related to and synonymous with "probable cause." *Smith v. Kansas Dept. of Revenue*, 291 Kan. 510, 513-14, 242 P.3d 1179 (2010). "Probable cause to arrest is the reasonable belief, drawn from the totality of information and reasonable inferences available to the arresting officer, that the defendant has committed or is committing a specific crime." *State v. Johnson*, 297 Kan. 210, 222, 301 P.3d 287 (2013). Probable cause is "a higher standard than reasonable suspicion but a lower standard than necessary to establish guilt beyond a reasonable doubt." *Bixenman v. Kansas Dept. of Revenue*, 49 Kan. App. 2d 1, 6, 307 P.3d 217 (2013).

4

Before giving someone an evidentiary test for alcohol, a police officer must give oral and written notice of the information listed in K.S.A. 2015 Supp. 8-1001(k). When giving the test, the officer must follow certain procedures to ensure that it is accurate. See K.A.R. 28-32-9(b)(4). If a person fails the evidentiary test for alcohol, the police officer must complete a certification and notice of suspension, a form called the DC-27. K.S.A. 2015 Supp. 8-1002(a). The officer certifies on the DC-27 that, among other things, the officer had reasonable grounds to believe that the person was operating a vehicle while under the influence of alcohol, the officer presented the person with the required oral and written notices, the officer followed the required testing procedures, and the officer gave the person a copy of the DC-27 form itself. K.S.A. 2015 Supp. 8-1002(a)(2), (c). The DC-27 is admissible as evidence in any trial that may follow the arrest and license suspension. K.S.A. 2015 Supp. 8-1002(b).

At the district court, the burden was on Nordhus to show that the officer lacked reasonable grounds to believe he was operating a vehicle while under the influence of alcohol. See K.S.A. 2015 Supp. 8-1020(q) ("Upon review [by the district court], the licensee shall have the burden to show that the decision of the agency should be set aside."). On review, this court asks whether a district court's decision in a license suspension case was supported by substantial evidence. *Drake v. Kansas Dept. of Revenue*, 272 Kan. 231, 234, 32 P.3d 705 (2001); see also K.S.A. 77-623 ("Decisions on petitions for judicial review of agency action are reviewable by the appellate courts as in other civil cases."). Evidence is substantial when a reasonable person would accept it as adequate to support a conclusion. *State v. Jolly*, 301 Kan. 313, 325, 342 P.3d 935 (2015). When reviewing factual findings, appellate courts do not reweigh evidence, resolve evidentiary conflicts, or make determinations regarding witness credibility. *State v. Hall*, 292 Kan. 841, 859, 257 P.3d 272 (2011).

Because the officer who performed the evidentiary breath test did not testify, the district court relied on the DC-27 certification form. By statute, the DC-27 is admissible

5

evidence even without testimony from the officer who completed the form. K.S.A. 2015 Supp. 8-1002(b); *State v. Baker*, 269 Kan. 383, 387, 2 P.3d 786 (2000) ("Once the certification requirements are completed, the DC-27 form is admissible as evidence to prove the statements contained therein."). The DC-27 in this case provided the following evidence regarding reasonable grounds: odor of alcoholic beverages, alcoholic beverage containers found in the vehicle, failed field sobriety tests, slurred speech, bloodshot eyes, difficulty in communicating, and poor balance or coordination. Deputy Trostle's testimony confirmed the odor of alcohol coming from Nordhus' vehicle and the open beer can on the dashboard. Trostle also testified that Nordhus had slurred his speech when answering Deputy Scoville's question about whether he had been drinking. Nordhus testified about the sobriety tests, and he admitted that he had had difficulty standing on one leg. He attributed that difficulty to a back injury, but he did not provide any evidence to support that assertion. Trostle could not confirm the other facts—failed sobriety tests, difficulty communicating, and poor balance or coordination—because he was not involved in the sobriety tests, but Nordhus' testimony did not strongly refute them.

Nordhus testified that while he had had more than one beer the night before, he had stopped drinking around midnight. According to Nordhus, he had driven his car to the location of the traffic stop, parking there around 1 a.m. because it was foggy. But the district court was entitled to make its own credibility determinations. See *Hall*, 292 Kan. at 859. The evidence provided in the DC-27 and supported by Trostle's testimony was sufficient to support the district court's conclusion that Scoville had reasonable grounds to believe Nordhus was operating a vehicle while under the influence of alcohol.

Nordhus also suggests that the evidence was not sufficient to prove that he was operating or attempting to operate his car. But Nordhus testified that he had driven his car to the location of the traffic stop. Trostle testified that at the time of the stop the engine had been running. Nordhus testified that his engine had not been running, but the district court was entitled to accept whichever testimony it found more credible, and we will not

6

second guess credibility determinations. See *Hall*, 292 Kan. at 859. Substantial evidence supported the conclusion that Nordhus was operating a vehicle.

While arguing that Scoville lacked reasonable grounds, Nordhus also alleges in passing that Scoville did not provide the oral and written notices required by statute, failed to follow the testing procedures, and failed to serve Nordhus with the DC-27 form. These three issues are unrelated to reasonable grounds, as they deal with what happened *after* the officer has arrested someone. Under Supreme Court Rule 6.02(a)(5) (2015 Kan. Ct. R. Annot. 41), "[a]n appellant's brief shall contain the arguments and authorities relied upon, *subdivided as to the separate issues in the appeal if more than one*." (Emphasis added.) *State v. Seck*, 274 Kan. 961, Syl. ¶ 2, 58 P.3d 730 (2002). The issues stated in the appellant's brief are binding (as opposed to the issues stated in the docketing statement, which are not binding). *Bryson v. Wichita State University*, 19 Kan. App. 2d 1104, 1106, 880 P.2d 800, *rev. denied* 256 Kan. 994 (1994). Despite the fact that Nordhus incorrectly and incompletely briefed these three issues, we will address why none of them succeed.

Before giving someone an evidentiary test for alcohol, a police officer must give oral and written notices of the information listed in K.S.A. 2015 Supp. 8-1001(k). Here, the DC-27 states that Scoville provided Nordhus with the required oral and written notices. Nordhus testified that he did not remember receiving the notices. Trostle could not testify on this subject because he was not the officer who tested Nordhus. Despite the conflict in the evidence, the district court's finding that Scoville provided Nordhus with the required notices was supported by substantial evidence, namely, the DC-27.

When giving an evidentiary breath test, an officer must follow certain procedures to ensure the test is accurate. See K.A.R. 28-32-9(b)(4). Officers do not need to follow these procedures strictly but must substantially comply with them. See K.S.A. 2015 Supp. 8-1020(h)(2)(F); *Mitchell v. Kansas Dept. of Revenue*, 41 Kan. App. 2d 114, 117-18, 200 P.3d 496, *rev. denied* 289 Kan. 1279 (2009). One of these procedures is a 20-

7

minute deprivation period to ensure that the test results are accurate and not the result of drinking alcohol, vomiting, or belching immediately before taking the test. See *Mitchell*, 41 Kan. App. 2d at 119. Here, the DC-27 states that the officer followed the required testing procedures. Nordhus testified that he did not remember the officer looking in his mouth or asking if he had belched or vomited, but he later stated that he did not know which, if any, procedures were not correctly followed. Nordhus did testify that he did not have any alcohol and was with Scoville during the 20 minutes before the test. The district court's conclusion that the testing procedures were followed was supported by substantial evidence.

The DC-27 must be served on the person who was tested. K.S.A. 2015 Supp. 8-1002(c). Officers must substantially comply with this requirement. *Snyder v. Kansas Dept. of Revenue*, No. 103,767, 2011 WL 1196917, at *3 (Kan. App.) (unpublished opinion), *rev. denied* 293 Kan. 1108 (2011). The purpose of this requirement is to notify a person whose license will be suspended of his or her right to an administrative hearing. 2011 WL 1196917, at *3. Here, the DC-27 form states that it was served on Nordhus. Nordhus first testified that he had received the DC-27, he later stated that the officer had not directly given him any forms or paperwork after the breath test, and then he admitted that he had received paperwork when he was released from jail. Nordhus obviously pursued an administrative hearing on his license suspension, so he was adequately informed of his rights. The district court's finding that Nordhus was served with the DC-27 was supported by substantial evidence.

Substantial evidence supports each of the district court's conclusions.

Affirmed.